**H. L. "BROWNIE" CHOATE, INC.,
Petitioner,**

**v.**

**SOUTHLAND DRILLING COMPANY, Inc.,
Respondent.**

**No. B–1646.**

Supreme Court of Texas.

Nov. 26, 1969.

Perkins, Davis, Oden & Warburton, Lawrence H. Warburton, Jr., Alice, for petitioner.

Lang, Cross, Ladon, Oppenheimer & Rosenberg, Paul M. Green, San Antonio, for respondent.

HAMILTON, Justice.

Plaintiff-petitioner, H. L. "Brownie" Choate, Inc., brought this suit on a sworn account for $2,648.27 plus attorneys' fees. Defendant-respondent, Southland Drilling Co., Inc., pleaded accord and satisfaction as a defense. The trial court, without a jury, found that the sworn account had been discharged by accord and satisfaction; therefore, a take nothing judgment was ordered against plaintiff. The Court of Civil Appeals affirmed the judgment of the trial court. 441 S.W.2d 672. We reverse the judgment of the Court of Civil Appeals and remand the cause to the trial court for a new trial. We hold that there was no evidence that plaintiff knew or was bound to know that defendant's check dated November 23, 1965, was tendered on the condition that acceptance of the check would constitute full payment of the amount in dispute; without such, there can be no accord and satisfaction.

For several years prior to and after April 25, 1965, plaintiff was employed from time to time by defendant to transport oil field equipment. On occasions defendant's equipment was damaged by plaintiff. On these occasions defendant would prepare invoices showing the amount of damages. The amount of damages would then be deducted from the amount due to plaintiff for his services. Defendant would then send plaintiff a check for the net amount, together with a copy of defendant's invoice showing the amount of damages.

On April 25, 1965, one of plaintiff's trucks overturned, causing considerable damage to defendant's equipment. Defendant prepared Invoice 65 which showed the amount of damages to be $9,596.27. Defendant delivered Invoice 65 to plaintiff. Plaintiff delivered this Invoice to his insurance carrier. Knowing that his insurance policy contained a $2,500.00 "deductible" clause, plaintiff instructed defendant to deduct the $2,500.00 from the amount defendant owed plaintiff for services. This left a balance of $7,096.27. On September 15, 1965, plaintiff's insurance carrier paid defendant $4,448.00, leaving a balance on Invoice 65 of $2,648.27 which was represented by down time amounting to $1,875.00 and trucking cost amounting to $773.27. The insurance carrier claimed that the latter two amounts were not covered under the insurance policy.

Between September 15, 1965, and October 5, 1965, there were apparently no communications between plaintiff and defendant regarding the $2,648.27 balance on Invoice 65. On September 30, 1965, plaintiff sent defendant a statement for services rendered amounting to $1,207.07. On October 5, 1965, defendant returned this statement to plaintiff with the notation that "This amount, $1207.07, has been applied to Invoice No. 65, 6/1/65. Your unpaid balance on Inv. 65 is now $1441.20." Having received this returned statement and notation, plaintiff on October 13, 1965, wrote defendant a letter stating "Please send us a copy of your invoice number 65. The invoice you sent us was picked up by Employers Casualty Co." Defendant then sent plaintiff a copy of Invoice 65. The evidence reveals that after October 5, 1965, there were also oral communications between plaintiff and defendant regarding the $2,648.27 balance on Invoice 65.

In response to plaintiff's October statement for $5,380.24, defendant on November 23, 1965, sent plaintiff a check for $3,526.99.

The detachable stub attached to defendant's check stated as follows:

| DESCRIPTION OF PAYMENT | AMOUNT | NET AMOUNT |
|---|---|---|
| October account | 5,380.24 | |
| Less: Missing Inv. No. 4685 | 97.05* | |
| Less: Bal. due on our Inv. No. 65 | 1,441.20 | |
| our Inv. No. 66 | 315.00* | 3,526.99 |
| [* Not material to this lawsuit.] | | |

Defendant argues that this check was tendered on the condition that acceptance of the check by plaintiff would constitute full payment of the disputed $2,648.27. Plaintiff endorsed and deposited the check to his account.

Plaintiff and defendant continued doing business together until December, 1966, at which time plaintiff went out of business. In every statement sent to defendant after October, 1965, plaintiff included as being due and payable the $2,648.27. In response to each of these statements defendant continued to deduct the $2,648.27 from the statements and a check for the net amount would then be sent to plaintiff.

In its "Findings of Fact" the trial court found the following pertinent facts:

"6. Reasonable attorneys fees for plaintiff's attorneys in this action are Eight Hundred Fifty Dollars.

"10. On or about October 4, 1965, plaintiff was notified by defendant * * [through defendant's notation on plaintiff's statement dated September 30, 1965, and through defendant's Invoice 65] that it intended to deduct from its current and future accounts payable to plaintiff the balance remaining on its Invoice No. 65, said balance being the sum of $2,648.27.

"13. On or about November 23, 1965, still disputing in good faith its liability for payment of plaintiff's ac- count, defendant tendered its check * * * in the amount of $3,526.99 to plaintiff on condition that its acceptance would discharge the defendant's account payable to plaintiff in full and discharge the plaintiff's alleged remaining liability to defendant on its Invoice No. 65. The condition was expressed on the face of the check stub and defendant's intent with respect to such condition had previously been communicated to plaintiff. (See Finding of Fact No. 10).

"14. Plaintiff knew, when it accepted and cashed the defendant's check * * * that such check was tendered to it in full satisfaction of the account sued upon herein."

The Court of Civil Appeals stated the following two bases for holding that plaintiff was bound to know that defendant's November 23, 1965, check was tendered on the condition that it would be full settlement of the disputed $2,648.27:

1. Defendant's notation written on the face of plaintiff's September 30, 1965, statement.

2. Plaintiff's oral communications with defendant between October 5, 1965, and the date plaintiff endorsed and deposited defendant's November 23, 1965, check.

The general rule of law regarding the "conditional tender of payment" element necessary to constitute an accord and

satisfaction is that the conditional tender must be expressed by acts or declarations with sufficient clarity that the creditor is bound to know that his acceptance of the tendered payment will constitute full payment of his claim. Industrial Life Insurance Co. v. Finley, 382 S.W.2d 100 (Tex. 1964); 1 Am.Jur.2d Accord and Satisfaction § 14 and 1 C.J.S. Accord and Satisfaction § 33.

■ In light of this general rule, we will now review the evidence relied upon by the trial court and the Court of Civil Appeals. Firstly, we will consider the notation written by defendant on plaintiff's statement dated September 30, 1965. This notation ("This amount, $1207.07, has been applied to Invoice No. 65, 6/1/65. Your unpaid balance on Inv. 65 is now $1441.20.") may be evidence that defendant was holding plaintiff liable for the disputed $2,648.27 and that defendant intended to deduct the $1,441.20 balance from plaintiff's next statement, but the notation is not evidence that defendant's check dated November 23, 1965, with the attached check stub was tendered on the condition that acceptance of the check by plaintiff would constitute full settlement of the disputed $2,648.27. This notation was not such that plaintiff was "bound to understand" that the check was tendered on the condition that it was full settlement.

Secondly, it is argued that the check stub attached to defendant's check dated November 23, 1965, is evidence of the conditional tender of the check. The check stub shows merely that the $1,441.20 balance on Invoice 65 was being deducted from the amount plaintiff claimed was due. Again, this is not evidence that if plaintiff accepted the check such acceptance would constitute full and final settlement of the disputed $2,648.27.

Thirdly, it is argued that plaintiff was bound to know that the check was conditionally tendered because of the oral communications between officers of defendant and plaintiff's president, Brownie Choate.

Defendant's officer and stockholder, Copenhaver, testified that he and Choate had a number of discussions regarding the disputed $2,648.27 and that during each discussion he told Choate that he thought Choate owed defendant the $2,648.27 because Invoice 65 actually represented less than what the accident cost defendant. Copenhaver further testified as follows:

"I have always had a real good relationship with Brownie [Choate]. * * * But as far as his statement that these were exaggerated figures, and that all of his conversations with me indicated that I would straighten this out, I don't think that is quite right, and I beg to disagree with Brownie."

This testimony was in reply to Choate's testimony which was, in brief, that he telephoned Copenhaver after he received his September 30, 1965, statement which defendant had returned with the notation written on it; that following their conversation he felt that Copenhaver appeared to be agreeable to arbitration or further discussion; that for a period of time Copenhaver unsuccessfully attempted to contact him and vice versa; that the matter "drug on from conversation to conversation" and that when he received defendant's check dated November 23, 1965, he felt that it was merely a bookkeeping error caused by Copenhaver's failure to communicate to the bookkeeper the conversations between Copenhaver and Choate.

Mr. Jefferson, another officer of defendant, testified as follows:

"It was our intent that this check paid in full all indebtedness between the two companies.

"Q. All right, sir. Now, have you, or has anyone else from Southland Drilling, to your knowledge, ever indicated at any time to Mr. Choate or to any representative that this was other than your intention in the tender of this check of November 23, '65?

"A. No, sir, they have not."

Jefferson's testimony regarding defendant's "intent" that the check be conditionally tendered is not evidence that plaintiff was "bound to know" of the condition. Likewise, Copenhaver's testimony (that he did not indicate to Choate through their conversations that the dispute would be straightened out) is not evidence that plaintiff was bound to know of the conditional tender of the check.

Taking into consideration the notation on plaintiff's statement dated September 30, 1965, the check stub attached to defendant's check dated November 23, 1965, and all testimony favorable to defendant regarding the conversations and circumstances surrounding the disputed $2,648.27, we find no evidence that plaintiff knew or was bound to know that defendant's check dated November 23, 1965, was tendered on the condition that acceptance of the check by plaintiff would constitute full settlement of the disputed claims; therefore, there can be no accord and satisfaction.

We must remand this cause to the trial court for a new trial because there has been no determination of the legality or amount of defendant's claimed offset for down time and trucking expense, which offset defendant claims amounted to $2,648.27.

The judgment of the Court of Civil Appeals is reversed and the cause is remanded to the trial court for a new trial.